**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CHRIS DESHAWN CARPENTER** | ) | |
| **MUHAMMAD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:06-CV-1076-WKW** |
| | ) | |
| **BOB RILEY, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ANSWER AND SPECIAL REPORT

COME NOW the Defendants, **Bob Riley, Richard Allen, Gwendolyn Mosley, Carter Davenport, Tyrone Barrow, Brian Mitchell, Latrice Greene, Sharon Blakely and Anthony Askew,** by and through the Attorney General for the State of Alabama, the Honorable Troy King, and in accordance with this Honorable Court's December 6, 2006 Order, offer the following Answer and Special Report:

## PARTIES

1. Plaintiff, Chris Deshawn Carpenter Muhammad is an Alabama Department of Corrections ("ADOC") inmate currently incarcerated at Easterling Correctional Facility ("ECF").

2. Defendant Bob Riley is Governor of the State of Alabama.

3. Defendant Richard Allen is the Commissioner of ADOC.

4. Defendant Gwendolyn Mosley is employed by ADOC as a Warden III at ECF.

5. Defendant Carter Davenport is employed by ADOC as a Warden II at ECF.

6.  Defendant Tyrone Barrow is employed by ADOC as a Classification Specialist at ECF.

7.  Defendant Brian Mitchell is employed by ADOC as a Psychological Associate at ECF.

8.  Defendant Latrice Greene is employed by ADOC as a Classification Specialist Supervisor at ECF.

9.  Defendant Sharon Blakely is employed by ADOC as a Mail Clerk at ECF.

10. Defendant Anthony Askew is employed by ADOC as a Correctional Chaplain at ECF.

## <u>EXHIBITS</u>

In accordance with this Honorable Court's Order, the Defendants submit the following exhibits:

EXHIBIT 1 – Affidavit of Gwendolyn Mosley;

EXHIBIT 2 – Affidavit of Carter Davenport;

EXHIBIT 3 – Affidavit of Tyrone Barrow;

EXHIBIT 4 – Affidavit of Brian Mitchell;

EXHIBIT 5 – Affidavit of Latrice Greene;

EXHIBIT 6 – Affidavit of Sharon Blakely;

EXHIBIT 7 – Affidavit of Anthony Askew;

EXHIBIT 8 – Supplemental Affidavit of Anthony Askew;

EXHIBIT 9 – ADOC Regulation 448 – Inmate Mail

## PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are not a model of clarity and vary per defendant. As best as the undersigned can discern, Plaintiff alleges Defendants Bob Riley, Commissioner Richard Allen, Warden Gwendolyn Mosley, Carter Davenport, Brian Mitchell, Latrice Greene, Sharon Blakely and Anthony Askew have violated his Eighth and Fourteenth Amendment rights by providing him with prison accommodations that are overcrowded, unsafe and pose some unspecified health hazard. Plaintiff appears to allege that these purported violations are being exacerbated by the influx of State inmates from overcrowded county jails into the State penal system.

Plaintiff alleges that unspecified defendants have forced him to take counter-productive programs to get government funds illegally.

Plaintiff alleges that Defendant Blakely is not bonded and somehow this infringes on his First Amendment rights. He further alleges that Defendant Blakely intercepts and delays his U.S. Mail.

Finally, Plaintiff alleges Defendant Chaplain Askew refused Plaintiff's request to move into a faith or honor dorm. In his amended complaint, Plaintiff alleges his First and Fourteenth Amendment rights were violated on December 8, 2006 by Defendant Askew as Askew delayed his "Jumah service", a Muslim prayer. Plaintiff further claims Askew verbally assaulted him for bringing a prior civil action.

## DEFENDANTS' RESPONSE

1.    The Defendants deny that they violated the Plaintiff's constitutional rights.

2.    The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.      The Plaintiff has failed to state a claim upon which relief may be granted.

4.      The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.      The Defendants are immune from suit due to qualified immunity.

6.      The Plaintiff can not hold the Defendants liable under the theory of respondeat superior.

7.      The Plaintiff's claims are barred by 42 U.S.C. 1997e(e).

## STATEMENT OF FACTS

Plaintiff was assigned to ECF on June 24, 2006.  (Ex. 1, Pg. 1)  ECF has a designed capacity of 650 inmates and on January 2, 2007, housed 1265 inmates. (Ex. 1, Pg. 1)  All ADOC facilities are similarly housing numbers of inmates over designed capacities. (Ex. 1, Pg. 1)  ECF is understaffed, but officers work overtime to fill in the areas as needed.

On July 12, 2006, Classification Specialist Tyrone Barrow and Psychological Associate Brian Mitchell signed off on a progress review of inmate Muhammad. Defendant Mitchell recommended that Plaintiff be placed in the Crime Bill Substance Abuse Program ("CBSAP").  (Ex. 4, Pg. 2)  This recommendation is not counter-productive because the Plaintiff has a record of substance abuse. (Ex. 4, Pg. 2-3) Defendant Barrow also recommended Plaintiff for other self-help programs.  No one forces an inmate to participate in any self-help program. (Ex. 2, Pg. 1; Ex. 4, Pg. 1; Ex. 5, Pg. 1)

On July 12, 2006, Defendant Barrow recommended Plaintiff be placed in less restrictive custody at Alex City CWC and noted that Plaintiff is a "Substance abuser w/AA/NA attendance."  (Ex. 5, Pg. 1) Defendant Mitchell noted that Plaintiff needed

CPSAP and the final voting member, Latrice Greene, dissented without comment. (Ex. 5, Pg. 1, 2)   Plaintiff was not transferred to Alex City CWC. (Ex. 4, Pg. 2)

Sharon Blakely is the Mail Clerk at ECF and has the responsibility to inspect, sort and distribute inmate mail.

Plaintiff was considered for placement in the faith dorm which is open to members of all faiths.   Plaintiff was informed by Defendant Chaplain Askew that he needed to go through the drug treatment program before he could move into the faith dorm. (Ex. 7)

"Jumah" is an Islamic prayer that is held every Friday at 12:00 pm provided that security permits.   Chaplain Askew was not on duty on December 8, 2006, when Plaintiff alleges Defendant Askew delayed his Jumah prayer.   All religious services are called by the shift commander's office provided there are officers to cover each security post. Jumah can be delayed for any number of reasons.   The most common reason is the morning security count not clearing in a timely manner, which in turn, causes all other institutional obligations to veer off schedule including doctors' appointments, food service, legal appointments and chapel call. (Ex. 8)

## ARGUMENT

### Summary Judgment Standard

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56.   In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   The burden of proof is upon the moving

party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

**I. Cruel and unusual punishment claims are due to fail.**

Plaintiff appears to be making the argument that the conditions of his confinement violate the Eighth Amendment against cruel and unusual punishment because ECF is overcrowded, lacks sufficient security and constitutes an unspecified health hazard.

Although the Eighth Amendment prohibits "cruel and unusual punishment" of inmates, it does not require that prisons be comfortable. *Farmer v. Brennan*, 511 U.S.

825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) A valid Eighth Amendment claim has two components: (1) an objective component which requires that challenged conditions be "sufficiently serious;" and (2) a subjective component which requires that prison officials exhibit "deliberate indifference" to prisoner health or safety. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991)); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994); *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).

The Supreme Court has held that deliberate indifference describes a state of mind more blameworthy than negligence. *Farmer*, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837

When evaluating prison conditions, courts should keep in mind that a prison population is comprised of a "large, confined population of convicted felons, not a nursery school." *Battle v. Anderson*, 788 F.2d 1421, 1426 (10th Cir. 1986)

In the Eleventh Circuit, to establish an Eighth Amendment violation of cruel and unusual punishment, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

1.    **The Plaintiff has failed to satisfy the objective component required for claims regarding alleged unconstitutional conditions of confinement.**

"The objective component 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,"' 'but must be balanced against competing penological goals.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579(8th Cir. 1968)  Although several conditions of confinement in combination may also establish an Eighth Amendment violation, to be actionable they must have "a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349 — and permits prison conditions that are "restrictive and even harsh," *Farmer v. Brennan*, 511 U.S. at 833 (quoting *Rhodes,* 452 U.S. at 347)  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (excessive force against prisoner may be cruel and unusual if it inflicts wanton and unnecessary pain though no serious injury) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (double-bunking of inmates in single-occupancy cells not cruel and unusual)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at

347)  This proposition "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (cruel and unusual to require denationalization of certain wartime deserters)  "Today the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 346 (citations omitted)

The Plaintiff has failed to show an "objective" violation of the Eighth Amendment.  He has failed to allege the deprivation of a single identifiable need such as food, warmth or exercise. The Plaintiff's claims do not rise to the level of a constitutional violation.

Plaintiff attempts to buttress his amorphous allegation of unconstitutional conditions of confinement by generally alleging a lack of security.  He in no way alleges that he has been harmed or attacked by an inmate or prison personnel as a result of insufficient security.  Plaintiff's assertion of lack of security is patently vague and frivolous.   The testimony of Warden Mosley is that understaffing is compensated by officers working overtime as needed.

Under the Eighth Amendment's prohibition of cruel and unusual punishment, inmates have a constitutional right to protection from the constant threat of violence and physical assault by other inmates.  *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates.") (internal quotes and citations omitted).  Nevertheless, not every injury inflicted

on an inmate by another inmate results in a constitutional violation. *Farmer*, 511 U.S. at

834. As the United States Supreme Court explains in *Wilson v. Seiter*:

> After incarceration, only the unnecessary and wanton infliction of pain …
> constitutes cruel and unusual punishment forbidden by the Eighth
> Amendment. To be cruel and unusual punishment, conduct that does not
> purport to be punishment at all must involve more than ordinary lack of
> due care for the prisoner's interests or safety … It is *obduracy and*
> *wantonness*, not inadvertence or error in good faith, that characterize the
> conduct prohibited by the Cruel and Unusual Punishments Clause,
> whether that conduct occurs in connection with establishing conditions of
> confinement, supplying medical needs, or restoring official control over a
> tumultuous cellblock.

*Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S. Ct. 2321, 2324 (1991) (quoting *Whitley v.*

*Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986)) (emphasis added). In *Farmer v.*

*Brennan*, the United States Supreme Court held that the Eighth Amendment is violated

by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to

an inmate." *Farmer*, 511 U.S. at 828. Prison officials may be liable "where they are

'deliberately indifferent to a prisoner's constitutional rights, either because they actually

intended to deprive him of some right, or because they acted with reckless disregard of

his right to be free from violent attacks by fellow inmates.'" *Zatler*, 802 F. 2d at 400-401

(quoting *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)). It is important to note,

however, that a mere negligent failure to protect an inmate from an attack by a fellow

inmate does not result in liability under §1983. *Farmer*, 511 U.S. at 835 (Deliberate

indifference "describes a state of mind more blameworthy than negligence."); *see also*

*Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327,

330-31 (1986); *Bailey v. Board of County Commissioners*, 956 F.2d 1112, 1121 (11th

1992).

The "deliberate indifference" standard is comprised of two parts. First, the standard requires the alleged deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834 (citations omitted). "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotes and citations omitted). Where an inmate's complaint involves an attack by another inmate, this objective aspect of the standard requires the inmate to establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, in *Farmer*, the Supreme Court adopts a subjective test for "deliberate indifference," holding:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Furthermore, the known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a correctional officer's failure to protect can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)). In addition, the plaintiff must provide proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional violation to establish a claim under 42 U.S.C. §1983. *Zatler*, 802 F.2d at 401. When defendants are sued in their individual capacities, the causation inquiry must be more "refined and focused." *Id*.

In this case Plaintiff fails to state a cause of action entirely because he alleges no

injury. He makes no allegations that there is a "serious risk of substantial harm" or that there is a strong likelihood of serious injury, much less any deliberate indifference.

Plaintiff then attempts to buttress his claim of unconstitutional conditions of confinement by alleging that conditions are a health hazard. This allegation is so vague, that is fails to put the Defendants on notice as to what allegedly constitutes a health hazard and therefore, no response can be given.

The Court should note that the Plaintiff's initial assignment to ECF would have been made at Kilby Correctional Facility due to the fact that all male inmates enter the state penal system. None of the instant defendants work at Kilby or had anything to do with the Plaintiff's assignment to ECF.

## II. Plaintiff is not forced to participate in "self-help" programs and fails to state a constitutional cause of action.

Plaintiff alleges that he has been forced to "take counter productive programs, such as "Presap, Crime Bill and aftercare." Even if this were true, which it is not, it is not clear what constitutional cause of action this would constitute. The facts are that Plaintiff has been recommended for substance abuse programs, but has not been forced to participate in these programs.

As to Plaintiff's assertion that taxpayer money is being misspent on these programs, he lacks standing even if taxpayer standing existed, inasmuch he is an inmate who is not paying taxes.

## III. Plaintiff's mail is handled according ADOC policy.

Plaintiff alleges Defendant Sharon Blakely intercepts and delays his mail. Inmate mail protocol is outlined in ADOC Regulation 448. In *Turner v. Safely* 492 U.S. 78, 89-

91 (1987), the Supreme Court stated the legal standard for reviewing the constitutionality

of prison regulations as follows:

> If *Pell*, *Jones*, and *Bell* have not already resolved the question posed in
> *Martinez*, we resolve it now:  when a prison regulation impinges on
> inmates' constitutional rights, the regulation is valid if it is reasonably
> related to legitimate penological interests.  In our view, such a standard is
> necessary if "prison administrators…, and not the courts, [are] to make the
> difficult judgments concerning institutional operations."  *Jones v. North
> Carolina Prisoners' Union*, 433 U.S., at 128, 97 S.Ct., at 2539.
> Subjecting the day-to-day judgments of prison officials to an inflexible
> strict scrutiny analysis would seriously hamper their ability to anticipate
> security problems and to adopt innovative solutions to the intractable
> problems of prison administration.  The rule would also distort the
> decisionmaking process, for every administrative judgment would be
> subject to the possibility that some court somewhere would conclude that
> it had a less restrictive way of solving the problem at hand.  Courts
> inevitably would become the primary arbiters of what constitutes the best
> solution to every administrative problem, thereby "unnecessarily
> perpetuat[ing] the involvement of the federal courts in affairs of prison
> administration."  *Procunier v. Martinez*, 416 U.S., at 407, 94 S.Ct., at
> 1808.
>      As our opinions in *Pell*, *Bell*, and *Jones* show, several factors are
> relevant in determining the reasonableness of the regulation at issue.

The *Turner* Court listed the factors in determining the validity of prison

regulations as (1) whether there is a valid, rational connection between the prison

regulation and the legitimate governmental interest put forward to justify it; (2) whether

there are alternative means of exercising the right that remain open to prison inmates and

if there are other avenues to exercise the asserted right; (3) what impact the

accommodation of the asserted constitutional right will have on guards, other inmates and

the allocation of prison resources generally; and (4) the absence of ready alternatives is

evidence of the reasonableness of a prison regulation.

In this case, the Court should note that Plaintiff alleges only a slight delay in

receiving his mail.  ADOC's mail policies have withstood constitutional challenges.  *See*

*Smith v. Mosley*, 2006 WL 559492 (MD Ala.), preauthorization of subscription magazines, constitutional; requiring bed and dorm number, constitutional; *Fawaad v. Herrin*, 874 F Supp 350, (ND Ala. 1995) dual use name policy, constitutional.  Plaintiff merely states his mail is delayed and that alone fails to allege a constitutional violation.

**IV. The claims against Defendant Chaplain Askew are without merit.**

A. Violation of Religious Freedom

Plaintiff alleges in his amended complaint that his First Amendment right to freedom of religion has been violated because Defendant Chaplain Askew delayed his Jumah prayer on December 8, 2006.  The record clearly reflects that Defendant Askew was not on duty on December 8, 2006, and can not factually have delayed Plaintiff's prayer.  Defendant Askew does speculate in his affidavit that if services or prayers were delayed it could have been for any number of reasons.  In particular, Defendant Askew states that the morning inmate number did not clear and it could have caused delays for not only religious activities, but doctors' and legal appointments and food service.

B. Verbal Assault

Plaintiff claims Defendant Askew verbally assaulted him.  Alabama has never recognized a tort of verbal assault.  In *McFadden v. Lucas,* 713 Fd 143 at 146 (5th Cir. 1983) the Court held, "…as a rule mere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations."

**V.  Defendants are immune from suit.**

Plaintiff's suit is barred under the doctrines of discretionary function and qualified immunity. Qualified immunity protects government officials from civil trials and liability when their conduct "violates no clearly established statutory or constitutional rights of

which a reasonable person would have known." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Defendants are also entitled to discretionary-function immunity, which protects the discretionary acts of state employees from suit unless a plaintiff can show the employee acted maliciously or in bad faith. *Taylor v. Adams*, 221 F.3d 1254, 1261 (11th Cir. 2000). As Plaintiff has not shown that the Defendants' acts violated clearly established law, or were done in bad faith, they are immune from suit.

To the extent that the Plaintiff asserts his claims against the defendants in their official capacities, the claims must fail because the defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). All Defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. The defendants are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

**VI. Plaintiff can not hold Defendants Bob Riley and Richard Allen liable under the theory of respondeat superior.**

Presumably, Plaintiff's claim against Governor Bob Riley and Commissioner Richard Allen is an attempt to hold them responsible through the concept of respondeat superior which is not available to a plaintiff under § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Absent some allegation that these defendants knew of, sanctioned, participated in, or were otherwise "affirmatively linked" to the acts here complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1504 (11th Cir. 1985) *cert. denied.* 476 U.S. 1115 (1986)

**VII. Plaintiff has not stated sufficient injury to state a claim**

Plaintiff has failed to state any physical injury that he has suffered as a result of his confinement. He alleges some unknown health hazard, but does not state what the hazard is and does not claim to have been harmed by this alleged health hazard. At best, Plaintiff may be attempting to claim an emotional injury which is not allowed under 42 U.S.C. 1997e(e). To state a claim, an inmate's injuries need not be significant, but must be more than *de minimus*. *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.); modified in part by *Harris v. Garner*, 216 F. 3d 970 (2000). As stated in 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." To satisfy the injury requirement, an inmate need not show permanent injury, but must "offer some evidence of injury beyond a minimal one." *Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990). Because Plaintiff has not suffered any physical injury, he has not stated an Eighth Amendment claim and the Defendants are entitled to summary judgment.

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.  WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ Jeffery H. Long
Jeffery H. Long
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 - fax

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 23rd day of January, 2007, electronically filed the foregoing with the Clerk of Court using the CM/ECF and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Chris Deshawn Carpenter Muhammad, AIS 204950
Easterling Correctional Facility
200 Wallace Drive
Clio, AL 36017-2615

/s/ Jeffery H. Long
Jeffery H. Long

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
   AIS #204950,                    )
       Plaintiff                 )
                        )
VS.                     )
                        )     CASE NO. 2:06-CV-1076-WKW
                        )
BOB RILEY, GOVERNOR, et.al.      )
       Defendant (s)          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Gwendolyn Mosley</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Gwendolyn Mosley,</u> and I am presently employed as <u>Warden III</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate Chris Carpenter Muhammad #204950 was assigned to Easterling Correctional Facility on January 24, 2006. Easterling Correctional Facility was designed to house approximately 650 inmates, (50 inmates in the Segregation Unit and 600 inmates in 5 Population Dormitories). At the present time, approximately 1265 inmates are assigned to this Facility. All ADOC Facilities are over the required limit of inmates. I do not control the number of inmates entering this facility. ADOC is understaffed with Correctional Officers, and Easterling is not fully staffed at the present time, but we have officers to work overtime to fill in the areas that are needed.

I have not forced Inmate Carpenter Muhammad to take a Counter Productive Program.

I have not violated any of Inmate Carpenter Muhammad's Constitutional Rights.

_____
GWENDOLYN MOSLEY

Affidavit – Gwendolyn Mosley
Civil Action- 2:06-CV-1076-WKW
Page 2

SWORN TO AND SUBSCRIBED TO before me this the _____ 2ⁿᵈ _____ day of
_____ January _____, 2007.

_____ Linda E. Teal _____
NOTARY PUBLIC

My Commission Expires: _____ 7-15-07 _____

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
AIS #204950,                      )
    Plaintiff                 )
                                  )
VS.                               )
                                  )    CASE NO. 2:06-CV-1076-WKW
                                  )
BOB RILEY, GOVERNOR, et.al.       )
    Defendant (s)             )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Carter F. Davenport, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Carter F. Davenport, and I am presently employed as Warden II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate Chris Carpenter Muhammad #204950 alleges that Easterling Correctional Facility is overcrowded and lack of security. All Alabama Department of Corrections (ADOC) are over the required limit of inmates. At the present time our Facility has approximately 1265 inmates assigned. I do not control the number of inmates entering this facility. Our Facility is not fully staffed with Correctional Officers, but we have others to work overtime to fill in the areas that are needed. I have not forced Inmate Carpenter Muhammad to take a Counter Productive Program.

I have not violated any of Inmate Carpenter Muhammad's Constitutional Rights.

_Carter F. Davenport_
CARTER F. DAVENPORT

SWORN TO AND SUBSCRIBED TO before me this the 2nd day of
January , 2007.

_Grace M. Maloy_
NOTARY PUBLIC

My Commission Expires: 03/31/07

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
    AIS #204950,                       )
        Plaintiff                 )
                               )
    VS.                           )
                               )    CASE NO. 2:06-CV-1076-WKW
                               )
BOB RILEY, GOVERNOR, et.al.       )
        Defendant (s)          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Tyrone Barrow, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Tyrone Barrow, and I am presently employed as Classification Specialist, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

In reference to Inmate Chris Carpenter, AIS #204950A, (the petitioners allegations), as a Classification Specialist, I do not have anything to do with issues surrounding the overcrowding and/or security of the institution, the funding of the treatment programs, the mailroom, or the institutional religious programs.

I deny having violated any of Inmate Carpenter's Constitutional Rights.

_Tyrone Barrow_
TYRONE BARROW

SWORN TO AND SUBSCRIBED TO before me this the _2nd_ day of
_January_, 2007.

_Charlotte Wilson_
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2009

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
   AIS #204950,                       )
      Plaintiff                    )
                             )
VS.                           )
                           )    CASE NO. 2:06-CV-1076-WKW
                           )
BOB RILEY, GOVERNOR, et.al.        )
      Defendant (s)           )

## AFFIDAVIT

     Before me, the undersigned authority, a Notary Public in and for said County and State of

Alabama at Large, personally appeared Brian Mitchell, who being known to me and being by me duly

sworn, deposes and says under oath as follows:

     My name is Brian Mitchell, and I am presently employed as Psychological Associate II, employed

by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama,

36017. I am over twenty-one (21) years of age.

     On July 12, 2006, I attended the Progress Review of Inmate Chris Carpenter, AIS #204950A, in

my official capacity as Psychological Associate II for Easterling Correctional Facility. I signed the

Progress Review in agreement with the Classification recommendation and recommended that Inmate

Carpenter participate in the Crime Bill Substance Abuse Program (Exhibit A). The recommendation for

Crime Bill is not counter productive because this need was determined by Inmate Carpenter's record

(Exhibit B). I do not recommend programs on the basis of receiving government funding. I deny forcing

Inmate Carpenter to take any programs. I do not have control over the inmate population.

     I deny violating any of Inmate Carpenter's Constitutional Rights.

                                       _Brian Mitchell_
                                       BRIAN MITCHELL

SWORN TO AND SUBSCRIBED TO before me this the ___2nd___ day of

___January___, 2007.             _Linda E. Deal_
                                 NOTARY PUBLIC

My Commission Expires: ___7-15-07___

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM -   JUNE   29, 2006
=================================(COU122)=================================
AIS #: 00204950A     SSN: 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   RACE/SEX:  B/M   DATE OF BIRTH: 06/24/1976
NAME: CARPENTER, CHRIS DESHAWN        CUSTODY:    MED5   SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT    TIME SRVD:  00Y1M22 LAST DISC:
CRME: DIST CONTROL SUBSTANCE          MIN REL DT: 07/04/2008 ACTIVE DET:  0
DISC: HAS RECEIVED NO DISCIPLINARIES  PRL CONS:   00/00/0000 EDUCAT LEV: 10
WL/PGM: _____UNASSIGNED_____ PRIM OCCUP: TRUCK DRIVER

RECOMMENDED INSTITUTION:  ALEX CITY CWC        RECOMMENDED CUSTODY:  MIN-OUT

JUSTIFICATION:  SPECIAL REVIEW: Violent, habitual offender serving a 3 year term for

UDCS & TOP II.  Per intake subj. sold coc. to an informant & stole a gun from a pawn shop.

Source doc. requested from DA'S office most recently on 06/28/06. Criminal record includes

Fel. Assault (Police Officer--Ohio), 1992/Resisting Arrest (Ohio), 1993/Burg 3rd, Conspiracy to

Commit Assault 3rd degree (reduced from Assault 1st x 2), Assault 3rd(NP), Disorderly

Conduct, 1995/Assault 3rd, Harrassment.  No det. or sex offenses noted.  Per intake, subj. left

state while on bond on current cases, rearrested 2 years later.  Substance abuser w/AA/NA

attendance.  For system needs recommend Alex City CWC for a gradual reduction in custody,

but this writer dissents based on overall criminal record & nature of subj. crimes

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: NKE/BT 7-12-06   APP. S/L: _____

_____  07-12-06          Carte Flange + re June Dissent
CLASSIFICATION SPECIALIST       DATE     WARDEN OR DESIGNEE           DATE
William Mitchell       7-12-06          DeLuce Deese   7/13/06
Med5 C35 AP
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.  DATE     CLASSIFICATION COORDINATOR DATE

Detail Request must be 90 Days old before 90 Day
Review of dates.             CENTRAL REVIEW BOARD ACTION
___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: ?
When were details                Requested?   8/2/16
                                        _____
                                        CRB MEMBER          DATE

___ APPROVED  X  DENIED; DIVERTED TO: _____  REASONS: doc request for detls, not
90 days old. OK min-in. Reapply       D. Edwards 8/22/06
9/06 or when source data rec'd.         _____
                                        CRB MEMBER          DATE

___ APPROVED ___ DENIED; DIVERTED TO: _____  REASONS: _____
                                        _____
                                        _____
                                        CRB MEMBER          DATE

FINAL DECISION: INST  East MIN-IN  CUSTODY ___ DATE _____
DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: _____
LAST ACTION: 7/06 IRE REL Muslim      DNA: 7/04 SKILLS: Truck Driving
                                        OKTF

MH-0

## MENTAL HEALTH SERVICES
## RECEPTION MENTAL HEALTH SCREENING

Institution: __KILBY__    Date/Time Inmate Received: _01/6/06_
Date/Time of Screening: _01/6/06_    Signature /Title of Screener: _WMcRedson_

### MENTAL HEALTH TREATMENT PRIOR TO ENTERING THE ADOC
- ☐ Yes ☑ No   Psychotropic Medication: _____
- ☐ Yes ☑ No   Medication turned over to a DOC upon arrival?
- ☐ Yes ☑ No   Mental Health follow – up in last 90 days: _____
- ☐ Yes ☑ No   Suicide/self harm attempts in last 90 days: _____

### MENTAL HEALTH HISTORY Does inmate report a history of the following (if yes, provide details):
- ☐ Yes ☑ No   Outpatient treatment: _____
- ☐ Yes ☐ No   Inpatient treatment: _____
- ☐ Yes ☐ No   Psychotropic Medication: _____
- ☐ Yes ☐ No   Suicidal Attempts: _____
- ☐ Yes ☑ No   Suicidal Thoughts: _____
- ☐ Yes ☑ No   Head Injury: _____
- ☐ Yes ☑ No   Seizures: _____
- ☐ Yes ☑ No   Violent Behavior: _____
- ☑ Yes ☐ No   Substance Abuse: _Marijuana, Etoh_
- ☐ Yes ☑ No   Substance Abuse Treatment: _____
- ☐ Yes ☑ No   Special Education classes: _____

### INMATE SELF – REPORT OF CURRENT STATUS
- ☐ Yes ☑ No   First incarceration (reaction): _3rd  "It's alright"_
- ☑ Yes ☐ No   Reports family support: _Mother, wife, Sister_
- ☐ Yes ☑ No   Reports serious depression/remorse: _____
- ☐ Yes ☑ No   Thinking about suicide: _____
- ☐ Yes ☑ No   Has plan for suicide: _____
- ☐ Yes ☑ No   Possible to implement plan: _____
- ☐ Yes ☑ No   Reports hallucinations: _____

### BEHAVIORAL OBSERVATIONS
- ☐ Poor eye contact
- ☐ Disorientated
- ☐ Crying
- ☐ Illogical speech content
- ☐ Hostile
- ☐ Poor hygiene
- ☐ Overly anxious
- ☐ Memory deficits
- ☐ Appears to be hearing voices of seeing things
- ☐ Other unusual behavior: _____
- ☐ Unable to pay attention
- ☐ Unable to follow directions
- ☐ Signs of self-mutilation
- ☐ Unresponsive
- ☐ Unable to read
- ☐ Afraid
- ☐ Paranoid

### DISPOSITION PLACEMENT RECOMMENDATION (Based on reception mental health screening)
- ☐ Routine housing and mental health follow-up
- ☐ Priority mental health follow-up but not emergency
- ☐ Current Psychotropic meds verified/interim supply ordered
- ☐ Emergency mental health referral
- ☐ Safe cell recommended
- ☐ Parole violator interim assessment referral

| Inmate Name: | AIS#: |
|---|---|
| Carpenter, Chris | 204950 |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
    AIS #204950,                          )
        Plaintiff                       )
                                    )
VS.                                 )
                                  )      CASE NO. 2:06-CV-1076-WKW
                                  )
BOB RILEY, GOVERNOR, et.al.           )
    Defendant (s)                  )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Latrice Greene, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Latrice Greene, and I am presently employed as Classification Specialist Supervisor, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have in no way acted in collaboration with other ALDOC staff to make Inmate Carpenter the victim of overcrowding, lack of security, or place him in health hazardous situations. I do not have the authorization to allocate nor use government funds for any government program, including self-help programs (such as pre-sap, crime bill sap, or aftercare) offered by the Department of Corrections.

I have neither recommended nor forced Inmate Carpenter to participate in any programs at Easterling Correctional Facility. Inmate Carpenter was initially recommended for program participation in Crime Bill SAP as well as other self-help programs by Mr. Tyrone Barrow, his assigned Classification Specialist, on his file review dated March 28, 2006. On June 20, 2006 Inmate Carpenter was referred by Mr. Barrow to see Mr. Brian Mitchell, Psychological Associate regarding programs participation. Mr. Mitchell is the Supervisor of all of Easterling's drug treatment programs, as well Coordinator and Instructor of all of Easterling's self-help programs offered by the Department of Corrections. On July 12, 2006, Mr. Barrow completed a Special Review on Inmate Carpenter and made the recommendation for less restrictive custody and placement at Alex City CWC. Mr. Barrow also noted on the progress review that Inmate

Affidavit – Latrice Greene
Civil Action – 2:06-CV-1076-WKW
Page 2

Carpenter is a "Substance Abuser w/AA/NA attendance". On the same progress review, Mr. Mitchell made the notation "needs CBSAP" and the final voting member simple dissented with no comment or recommendation.

I have not violated any of Inmate Chris Carpenter's Constitutional Rights.

LATRICE GREENE

SWORN TO AND SUBSCRIBED TO before me this the 2 nd day of
January , 2007.

NOTARY PUBLIC

My Commission Expires: **My Commission Expires** Jan. 24, 2009

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
AIS #204950, )
    Plaintiff )
)
VS. )
)      CASE NO. 2:06-CV-1076-WKW
)
BOB RILEY, GOVERNOR, et.al. )
    Defendant (s) )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Sharon Blakely, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Sharon Blakely, and I am presently employed as Mail Clerk, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate Chris Carpenter Muhammad #204950 allegation that I have tampered or intercepted with inmates mail is untrue. As the Mail Clerk here at Easterling Correctional Facility I am responsible for inspect, sort, and distribute inmates' mail. All inmates are advised that all mail will be subject to inspection.

I have not violated Inmate Carpenter Muhammad's Constitutional Rights.

SHARON BLAKELY

SWORN TO AND SUBSCRIBED TO before me this the 2 nd day of January, 2007.

NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2009

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
AIS #204950,                          )
      Plaintiff                    )
                               )
    VS.                            )
                               )    CASE NO. 2:06-CV-1076-WKW
                               )
BOB RILEY, GOVERNOR, et.al.       )
    Defendant (s)            )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Anthony Askew, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Anthony Askew, and I am presently employed as Correctional Chaplain, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

In response to the plaintiff's allegation (that I violated his eight and fourteenth amendment) I categorically deny violating any of the plaintiff's rights. I have no knowledge of the plaintiff's suffering any duress while living in the dorms of Easterling.

In response to defendant (Askew) mandating plaintiff, Chris Carpenter Muhammad, to participate in pre-Sap Crime Bill or any other programs, I deny having anything to do with any of these programs. My primary job description is to officiate over religious programs. I have nothing to do with who goes into pre-sap or Crime Bill.

In response to plaintiff's allegation that I would not allow him to move into the Faith Based Honor Dorm, this is untrue. I called Mr. Mark Jankowski the Drug Treatment Counselor, while Mr. Muhammad was in my office, after speaking with Mr. Jankowski; I informed Mr. Muhammad that according to his counselor, he needed to go through the drug treatment program before he could move into the Faith Dorm. The Faith Dorm is open to all Faiths for any inmate who meets the criteria regardless of his faith orientation. Living within the dorm are men of all faiths.

Affidavit – Anthony Askew
Civil Action – 2:06-CV-1076-WKW
Page 2

I have not violated any of Inmate Chris Carpenter Muhammad's Constitutional Rights nor any

other religious groups rights.

_____
ANTHONY ASKEW

SWORN TO AND SUBSCRIBED TO before me this the 2nd day of
January , 2007.

_____
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2008

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS DESHAWN CARPENTER MUHAMMAD, )
AIS #204950,                       )
    Plaintiff                 )
                                   )
VS.                                )
                                   )        CASE NO. 2:06-CV-1076-WKW
                                   )
BOB RILEY, GOVERNOR, et.al.        )
    Defendant (s)             )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Anthony Askew, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Anthony Askew, and I am presently employed as Correctional Chaplain, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

## ADDENDUM TO PREVIOUS AFFIDAVIT

In response to the plaintiff's amended complaint that on December 8, 2006, I intentionally and willingly conspired to delay the Islamic prayer, "Jumah" I categorically state this is untrue. Jumah is held every Friday at 12:00 PM, provided security permits.

Although on December 8, 2006, I was off duty, the shift commander's office has a religious calendar ad they routinely call "Jumah" prayer ever Friday. All religious services are called by the shift commander's office provided there are officers to cover each security post. If Jumah is delayed it can be for any number of security reasons, one common reason may be the morning security count not clearing in a timely manner this would then cause all other institutional obligations to veer off it's normal schedule.

The affected obligations could include doctor appointments, feeding chow, legal appointment and also chapel call- thereby causing Jumah prayer to be delayed. On the alleged date of December 8, 2006, I was not present in the institution. I did not however conspire to delay their service by not being present. All services are treated in a respectful and professional manner.

Affidavit – Anthony Askew
Civil Action – 2:06-CV-1076-WKW
Page 2

No service is given any preferential treatment. All religious groups must comply with the security mandate

of the prison. Security, custody, and control are the primary function of the prison setting.

In response to the plaintiff's allegation that I approached him in a threatening manner and verbally

assaulted him I categorically deny this allegation.

I have not violated any of Inmate Chris Carpenter Muhammad's Constitutional Rights.

_____
ANTHONY ASKEW

SWORN TO AND SUBSCRIBED TO before me this the 2 nd _____ day of

January _____, 2007.

_____
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2008
_____



State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

December 19, 2005

ADMINISTRATIVE REGULATION                    OPR:  OPERATIONS
NUMBER                          448

## INMATE MAIL

I.      **GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for inmate mail.

II.     **POLICY**

It is the policy of the ADOC to allow inmate mail in accordance with the U.S. Postal Service regulations and the guidelines set forth in this regulation.

III.    **DEFINITIONS**

A.      <u>Contraband</u>:  Any item that is not permitted by law or is either prohibited or not specifically authorized by ADOC or institutional policy. Items not issued by the ADOC, not sold on the institutional canteen, or not specifically authorized by the Warden.

B.      <u>Correspondence</u>:  Written communication to or from inmates (e.g., letters, post cards, greeting cards) delivered by a postal service.

C.      <u>Inmate Personal Property</u>:  The items and amounts of clothing, equipment, mail, or supplies, which an inmate is allowed to have in his/her immediate possession.

D.      <u>Mail</u>:  For the purpose of this regulation, the term "mail" includes but is not limited to: items delivered by the U.S. Postal Service, inter-institutional mail, and any private carrier servicing the ADOC.

E.      <u>Mail Clerk</u>:  Staff member(s) assigned to the institutional mailroom.

F.      <u>Printed Materials</u>:  Books, publications, magazines, newspapers, periodicals, circulars, and catalogues delivered by the postal services.

G.      <u>Legal Mail</u>:  Letters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies.

H.    <u>Reasonable Suspicion</u>:  Rational inference that a reasonably prudent person could make from specific objective facts.

I.     <u>Internet Materials</u>:  Downloaded copy from a web site.

J.     <u>Religious Materials</u>:   Books, pamphlets, brochures, and religious study courses.

K.    <u>Nudity</u>:  A pictorial depiction where genitalia or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

L.     <u>Sexually Explicit</u>:  A picture/illustration of actual or simulated sexual intercourse, and/or oral sex, masturbation, or materials depicting sex.

## IV.   <u>RESPONSIBILITIES</u>

A.    The Warden shall be responsible for developing their institution/division Standard Operating Procedure (SOP) in accordance with AR 448, *Inmate Mail.*

B.    The Mail Clerk is responsible for the collection, inspection, and distribution of incoming/outgoing mail and for the maintenance of the mailroom records.

C.    The Chaplain or the Warden's designee is responsible for reviewing all mail entering the institution for an inmate that has been marked in care of the chaplain as it refers to religious materials.

## V.   <u>PROCEDURES</u>

A.    General Guidelines

1.    The inmates shall be permitted to send and receive correspondence unless it can be determined that such correspondence may present a threat to the safety and security of the public, staff, inmates, and institution.

2.    There is no limit on the volume of letters the inmate can send or receive, or on the language, content, or source of mail except when there is reasonable belief that limitation is necessary to protect the public safety or maintain institutional order.

3.    The Warden shall designate a secure mail area and drop boxes for outgoing mail accessible to all inmates.

4.    Mail between inmates, whether state, county, city, out-of-state or federal may be allowed with the permission of the Wardens involved. It must be shown that there is a close personal relationship (immediate family) between such inmates.

AR 448 – December 19, 2005

5.     Mail and packages addressed to an inmate, who has been transferred or released to another known address, should be mailed to the inmate within 48 hours, excluding weekends and holidays.

    a.     If a forwarding address is not available, such mail and packages shall be returned to the sender.

    b.     If neither a forwarding or return address is available, the mail shall be returned to the post office.

6.     All inmate mail shall remain under the supervision of staff until it is distributed. Inmates are not allowed in the mail area without supervision.

7.     At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other than the addressee.

8.     A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

B.     Incoming Mail

1.     All incoming mail must be addressed so as to specify the inmate's name, inmate AIS number, and location within the institution.

2.     An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes)*

3.     Promotional checks will not be accepted through the mail for deposit to inmate accounts.

4.     Correspondence, printed material, inmate personal property, or money will not be hand delivered to inmates by visitors.  The Warden/designee may allow attorneys to hand deliver "Legal Mail" directly to the inmate, subject to being searched for contraband.

5.     Inmate will not receive mail stamped "Collect on Delivery (COD)."

C.     Outgoing Mail

1.     All mail being sent from the institution must have a return address which will include: inmate's full name, inmate AIS number, name of institution, dorm/cell number, street address or P. O. Box number as appropriate, city, state, and zip code. Additionally, the following stamped disclaimer will be included on every piece of outgoing mail sent by inmates.

AR 448 – December 19, 2005

"This correspondence if forwarded from Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2.    An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes*)

3.    Designated staff should collect outgoing mail once each business day.

D.    Legal Mail

1.    Outgoing

a.    Inmates will be provided two (2) free stamps per week for **legal mail** only.

b.    Each Warden shall designate a box for "Legal Mail."

2.    Incoming

a.    A bound ledger shall be maintained by mailroom staff that lists each piece of legal mail received, the date inspected, delivered, and recipient's signature.

b.    The inmate will sign for all "Legal Mail" prior to receipt.

c.    All "Legal Mail" will be opened and inspected in the presence of the inmate.

E.    Limitations

1.    When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

2.    When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

3.    The Warden/designee will provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

F.    Inspection

1.    Incoming mail, including "Legal Mail", shall be inspected for contraband and/or for abuse of the mail privilege. Outgoing mail may be inspected for contraband.

2.    All contraband will be disposed of in accordance with AR 306, *Contraband and Evidence Management*.

3.    Every effort should be made to ensure that all incoming letters and packages are delivered within 72 hours after receipt at the institution, other than weekends and holidays. Inmates will be notified of rejected mail in accordance with procedures contained in V.G.

G.    Rejection

1.    In the event any incoming mail is rejected, the mail clerk will cite the policy violation and complete an ADOC Form 448, *Notification of Rejected Mail,* then forward to the inmate in a timely manner.

2.    An inmate may appeal the rejection to the Warden/designee for review and final determination. (Refer to ADOC Form 448, *Notification of Rejected Mail*).

3.    If the appeal is denied, the inmate will have the option of returning the mail to the sender at his/her own expense within 30 days, or the property will be destroyed at the end of the 30-day period.

4.    Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the Warden, it could reasonably be considered to:

a.    Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

b.    Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, and rebellion against government authority.

c.    Be an attempt to incite disobedience toward law enforcement officials or correctional staff.

d.    Be an attempt to give instructions for the manufacturing or use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substance.

e.    Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

AR 448 – December 19, 2005

f.      Contain plans to escape, unauthorized entry into the institution, or information or maps, which might aid an escape attempt.

g.      Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.

h.      Contain materials specifically found to be detrimental to inmate rehabilitation because it could encourage deviate criminal sexual behaviors.

i.      Publications that contain, nudity, graphic depictions of homosexuality, sadomasochism, bestiality, incest, or sex with children will be denied.

j.      Publications that primarily cover the activities of any sexual or political rights groups or organizations will normally be admitted.

k.      Before delivery of a publication may be denied, the Warden/designee must review the particular publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. It is not necessary to find that the particular recipient is likely to personally engage in such behavior before delivery can be denied.

5.      Abuse of mail privileges by inmates may result in rejection and possible disciplinary action. Abuses included but are not limited to the following:

a.      The writing of letters containing obscene, profane, or indecent language.

b.      Writings that contain threats, derogatory or personal attack against any person.

c.      Writings that contain an escape plot or any other clear threats to the institution.

d.      Receipt of mail, identified as legal mail, from any individual or agency not meeting the legal mail definition.

e.      Writing which contain language purporting to solicit, claim, or demand money, goods, or services by false statements, threats, intimidation or extortion from another person or firm is prohibited.

f.      Any written material in outgoing or incoming mail not specifically intended for the addressee identified on the exterior of the

AR 448 – December 19, 2005

envelope, i.e. sending mail with contents addressed to another party for forwarding which constitutes mail kiting.

H.    Publications/Books

1.    Inmates may receive no more than two books per month and four magazines or newspapers or a combination thereof. (Refer to AR 338, *Inmate Property*, for the number of items an inmate may have in his/her possession at one time.)

2.    The publications should be received directly from the publisher or a recognized commercial distributor and be pre-paid from a family member or friend or from the inmate's Prisoners Money on Deposit Account (PMOD).

3.    Receipt of publications by inmates in segregation will be determined by provision indicated in AR 433, *Administrative Segregation and Housing for Close or Maximum Custody*, and AR 434, *Disciplinary Segregation*.

4.    Each Warden/designee shall personally inspect each issue of a publication when a reasonable expectation that the particular issue violates the standards of this regulation. If they determine that the issue of the publication violates these standards then they will temporarily exclude the publication.

5.    The Warden/designee shall notify the inmate to whom the publication was addressed of the temporary ban.

6.    If the inmate appeals the temporary ban, it will remain in effect pending a final resolution. Upon notice of the appeal, the Warden will furnish a copy of the documentation on the matter to the Commissioner/designee. This documentation will include copies of pages of the excluded issue that contain material that has been identified as violating the restrictions.

7.    The Commissioner/designee will review the action taken by the institution to exclude that issue and either confirm or deny them.  If the temporary ban is confirmed, the inmate, the Warden, and all other institutions will be notified, the issue is permanently banned, and the matter closed. The documentation supporting the ban will be retained by the Legal Division and at the institution.

8.    If the temporary ban is denied, the publication will be given to the inmate and the entire matter dropped and all documentation destroyed.

9.    The permanent ban of an issue of a publication may not be relied upon to support an exclusion of a subsequent issue. For example, if the January issue of XYZ magazine is permanently banned, this ban may not be used

AR 448 – December 19, 2005

to justify an exclusion of the February issue of XYZ magazine. Each separate issue must be evaluated independently in accordance with this regulation.

10.    Inmates will not be allowed to be members of, enter into contractual agreements with, or participate in book clubs.

I.    Packages

1.    All religious materials such as books, pamphlets, brochures, and religious study courses shall be sent to the inmate in care of the Chaplain, and will be distributed by the Chaplain after approval and limits have been obtained from the Warden.

2.    Authorized inmates will be allowed to purchase, from their PMOD accounts, arts and craft items through approved reputable suppliers.

3.    Prior to Christmas, the Commissioner will publish instructions concerning the receipt of Christmas packages for inmates.

4.    Criteria for an inmate to receive Christmas packages are as follows:

    a.    Inmates must have a four (4) month clear record prior to November 1st – no disciplinaries or behavior citations.

    b.    Inmates who receives one (1) formal or informal disciplinary in the months of November and December will not be eligible to receive a package.

    c.    Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence of a serious nature will be restricted from receiving packages one year from the incident.

5.    Incentive Packages will be accepted beginning May and September for one package per inmate from a person on the inmate's visitation/funds list. Packages postmarked after May 31 and September 30 will be returned to the sender C.O.D. Inmates must submit a request for an incentive package to the Warden/designee.

6.    Criteria for an inmate to receive an incentive package are as follows:

    a.    Inmate must have six-month clear record-no disciplinaries or behavior citations.

    b.    Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence

AR 448 – December 19, 2005

of a serious nature will be restricted from receiving packages one year from the incident.

c.       Inmate should have two positive counselors/work reports within the six-month period preceding the package.

7.       An inmate may mail outgoing packages. However, these packages will be inspected for unauthorized items prior to dispatch. The sender-inmate must provide postage and wrapping materials.

8.       The Commissioner/designee may allow other packages as deemed appropriate.

## VI.    DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.    FORMS

ADOC Form 448 – Notification of Rejected Mail

## VIII.    SUPERCEDES

This regulation formally included in Administrative Regulation 303, dated May 30, 2000.

## IX.    PERFORMANCE

ACA standards for Adult Correctional Institutions, fourth edition:  4-4487; 4-4490; 4-4491; 4-4492; 4-4494; 4-4496

_____
Donal Campbell, Commissioner

AR 448 – December 19, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Notification of Rejected Mail**

From: _____     Date: _____
                Institutional Mail Room

To: Inmate _____     AIS#: _____

    Cell/Dorm: _____     Bed #: _____

Correspondence From: _____

Date received at this Institution: _____

Is being returned to sender due to the following reason(s): _____
_____
_____
_____

The inmate has the option to return mail to sender at his/her own expense within thirty (30) days
or the property will be destroyed.

The inmate has seventy-two (72) hours from the above date to appeal this return. State your
reason(s) for appealing in writing below and return this form to the Warden/designee:

_____
_____
_____
_____
_____
_____
_____

_____ / _____
Inmate Signature                                                    AIS#

_____
Date

**Appeal/Denied**                                    **Appeal/Upheld**

_____     _____
Printed Name                                         Printed Name

_____     _____
Authorized Signature                              Authorized Signature

_____     _____
Date returned to sender                          Date returned to inmate

**ADOC Form 448 – December 19, 2005**

AR 448 – December 19, 2005